UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ISAIAH MARIN, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 4:18-CV-1815 NAB |
|  | ) |  |
| CINDY GRIFFITH, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## **MEMORANDUM AND ORDER**

This matter is before the Court upon the motion of plaintiff (registration no. 1134898), an inmate at Missouri Eastern Correctional Center ("MCCC"), for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $45.32. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint and the supplemental complaints, the Court will order plaintiff to submit a second amended complaint on a court-provided form in compliance with the instructions set forth below. Plaintiff's failure to do so will result in a dismissal of this action, without prejudice.

### **28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make

monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $226.58. Accordingly, the Court will assess an initial partial filing fee of $45.32.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim for relief under § 1983, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to, *inter alia*, draw upon judicial experience and common sense. *Id*. at 679.

Pro se complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, they still must allege sufficient facts to support the claims alleged. *Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004); *see also Martin v. Aubuchon*, 623 F.2d 1282, 1286

2

(8th Cir. 1980) (even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law). Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone*, 364 F.3d at 914-15. In addition, giving a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993).

**The Complaint and Supplemental Complaints**

Plaintiff is an inmate at the Missouri Eastern Correctional Center. He brings this action pursuant to 42 U.S.C. § 1983 against the following defendants, named in his complaint: Cindy Griffith (Deputy Div. Director, Adult Institutions); Anne Precythe (Director); Shannon Montgomery (Square Cook); Donna Gillam (Farmington Correctional Center ("FCC"), Food Service Manager); David Vandergriff; FCC, Deputy Warden); Teri Lawson (FCC, Warden); Tammy White (FCC, Deputy Warden); James Cowie (FCC, Correctional Officer); Brittany Gillam (FCC, Square Cook); Kevin Mathes (FCC, Correctional Officer); K. Johnson (FCC, Case Manager); William Boyer (FCC, Asst. Warden); Melanie Hinkle (FCC, Functional Unit Manager); Brian Pettus (FCC, Correctional Officer); Tracy Lynch (FCC, Correctional Officer); John Hagardy (FCC, Case Manager); and Alan Butterworth (FCC, Acting Warden). Plaintiff names these defendants in their individual and official capacities in the complaint.[1]

---

[1] Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. Missouri Department of Corrections employees are employed by the State of Missouri. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." *Id.* As a result, the complaint fails to state a claim upon which relief can be granted against defendants in their official capacities as it is currently plead.

On April 11, 2019, plaintiff submitted a supplemental complaint adding claims and defendants to his complaint. He named the following defendants: John/Jane Doe I (MECC, Correctional Officer); Jane Doe (MECC, Correctional Officer); John/Jane Doe II (MECC, Correctional Officer); and Jennifer Sachse (MECC, Warden). Plaintiff again asserted that he was bringing his action against defendants in their individual and official capacities.

Plaintiff has submitted an eighty-two-page (82) handwritten complaint, as well as a seventy-five-page (75) supplemental complaint. The Court does not accept supplemental pleadings, and additionally, all complaints and amended pleadings are to be submitted on a court-provided form. *See Popoalii v. Correctional Medical Services*, 512 F.3d 488, 497 (8th Cir.2008) (finding that it is appropriate to deny leave to amend a complaint when a proposed amendment was not submitted with the motion); *see also*, E.D. Mo. Local Rule 2.06(A).

Additionally, plaintiff has included claims relating to two separate prisons – Farmington Correctional Center ("FCC") and Missouri Eastern Correctional Center ("MECC"), and he has brought more than eight separate (8) claims against twenty-one (21) defendants.

For example, plaintiff generally claims that he has been denied "access to the Inmate Canteen Fund Records" at the Missouri Department of Corrections at both MECC and FCC. However, he does not indicate why he needs such records, or which defendants he asked for the records or why he was purportedly denied the records.

Plaintiff goes into great detail regarding his work at FCC as a Level I Cook, and how he believes there is a hierarchy between inmates within job assignments. He asserts that some inmates, or "leadmen," have the ability to tell other inmates what to do within their job assignments. Plaintiff does not believe inmates should have supervisory authority over other inmates. Plaintiff asserts generally, that defendants Shannon Montgomery and Donna Gilliam,

4

(Cook and Food Service Manager at FCC), acted incorrectly in allowing some inmates to have supervisory authority as "leadmen" over other inmates in the kitchen. Plaintiff states in a conclusory fashion that Deputy Warden Vandergriff, Warden Teri Lawson, Deputy Director of Adult Institutions Cindy Griffith, and MDOC Director Anne Precythe all failed to fix the violations that were occurring at the FCC kitchen in that "leadmen" were being allowed to tell other inmates what to do in the kitchen environment.

Unfortunately, plaintiff does not state how he was harmed if, in fact, another inmate did direct his actions in the kitchen in any way. Plaintiff also does not state how he believes such a "hierarchy" in the kitchen was a constitutional violation. Moreover, although he claims that the supervisors of FCC and MDOC knew about the practice and condoned it, he has failed to provide anything other than his own conclusory allegations to support his contentions.

Plaintiff also claims that while he worked as a Level I Cook at FCC, from September through October 2017, he had to "repeatedly lift on a daily basis. . .fifty (50) pound bags/sacks of uncooked beans, uncooked oatmeal, uncooked grits, uncooked cracked wheat…" Plaintiff states that he lifted these items without back support. Plaintiff claims that he filed a grievance requesting that all workers required to lift heavy objects be provided "back support." Plaintiff attached the grievance response to his complaint, which advised him that if he felt that it was "unsafe to lift an item by [himself] request help." Plaintiff claims that this response was inadequate and asserts that defendants Deputy Warden Tammy White, Warden Teri Lawson, Food Service Manager Donna Gillam, Deputy Director of Adult Institutions Cindy Griffith and MDOC Director Anne Precythe are all responsible for realizing the need for back supports for food service workers who lift heavy objects and providing care for those persons.[2]

---

[2] Plaintiff does not indicate that he was denied medical care for any purported back issues he may have suffered.

Plaintiff asserts that on October 28, 2017, defendant Correctional Officer James Crowie reported a conduct violation against plaintiff for "minor assault." Plaintiff claims that Square Cook Brittany Gilliam reported a violation of "creating a disturbance" for the same incident at FCC.[3] Although plaintiff's allegations are not entirely clear, it appears that he is unhappy about the way the conduct violations were recorded by both MDOC employees and pursued within FCC. He states that pursuant to MDOC regulations, these conduct violations should have been pursued as "merged" because they arose from the same occurrence. However, plaintiff has not provided the Court with the facts relating to the purported occurrence. Nonetheless, he spends approximately seventeen (17) pages in his complaint complaining about the procedures used to pursue the conduct violations against him, and he outlines allegations against no less than seven (7) defendants: Kevin Mathes; James Crowie; Brittany Gilliam; K. Johnson; William Boyer; Melanie Hinkle; and Brian Pettus.[4] As far as the Court is able to discern, plaintiff has three complaints. Plaintiff is unhappy that the conduct violations were not heard together.[5] He is also unhappy that one of the violations should have been for "minor assault," but it was processed as a "major conduct violation." Last, as a result of the October 28, 2017 incident, as well as the January 13, 2018 incident, plaintiff lost good time credits and his parole date was changed.[6]

---

[3] Plaintiff states that this conduct violation was expunged.
[4] Plaintiff appears to believe that anyone who ruled against him in a grievance or IRR or grievance appeal has in some way violated his constitutional rights. Plaintiff is incorrect. There is no federal constitutional right to a prison grievance procedure, and neither state law nor state policy creates one. Therefore, if a state elects to provide a grievance mechanism, violations thereof will not give rise to a § 1983 claim. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (a prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983; a grievance procedure is procedural right only and does not confer substantive right on inmate). "Only persons who cause or participate in the [constitutional] violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F. 3d 605, 609 (7th Cir. 2007) (citations omitted).
[5] Plaintiff has submitted a "Warden's Response" indicating that the "minor assault" violation was reheard.
[6] Plaintiff asserts that On April 4, 2018 the Missouri Division of Probation and Parole changed plaintiff's release date from August 6, 2019 to August 6, 2020. Plaintiff does not have a constitutional right to be conditionally released before the expiration of his sentence, or to be given "good time" credits. *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *Dace v. Mickelson,* 816

Plaintiff asserts that on January 13, 2018, at approximately 6:45 a.m., he was singing a rap song in his cell at FCC, containing the words: "If they wouldn't charge me with a felony I would shank all you bitches. Plaintiff claims that Correctional Officer Tracy Lynch heard plaintiff and believed he was making a threat. Plaintiff, however, takes issue with they way defendant Lynch filled out the violation report, stating that Lynch failed to state who the alleged threat was directed to, and that Lynch failed to name the alleged "victim" on the violation report.

Plaintiff additionally names as defendants, John Hagardy, who acted as a Disciplinary Hearing Officer over the conduct violation and Alan Butterworth, who approved as submitted Hagardy's finding of "guilty." Plaintiff, however, does not indicate that Hargardy or Butterworth acted wrongfully in any way in hearing his conduct violation, or that he was denied due process during the hearing.[7]

Plaintiff claims that on April 6, 2018, he was found unconscious in his cell at MECC close to midnight by Correctional Officer Matthew Tarrant and an unidentified John/Jane Doe. He claims that the officers bound his ankles together in one zip-cuff. Plaintiff asserts that according to MDOC regulations, three zip-cuffs should have been used – one around each ankle and one attached to each zip-cuff. Plaintiff states that when he came to, the officers made him walk in a shuffle with his ankles still bound, and the zip-cuffs caused bleeding as they cut into the flesh of his ankles. Plaintiff claims that at the medical wing, pictures were taken of his ankles

---

F.2d 1277, 1280-81 (8th Cir. 1987).
[7] Supervisors cannot be held vicariously liable under § 1983 for the actions of a subordinate. *See Iqbal,* 129 S. Ct. at 1948. To state a claim, the plaintiff must plead that the supervising official, through his own individual actions, has violated the Constitution. *Id.* Where, as here, the alleged constitutional violation requires proof of an impermissible motive, the amended complaint must allege adequately that the defendant acted with such impermissible purpose, not merely that he knew of a subordinate's motive. *Id.*; see also, *Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983); *Woods v. Goord,* 1998 WL 740782, at *6 (S.D.N.Y. October 23, 1998) (receiving letters or complaints does not render prison officials personally liable under § 1983).

because the zip-cuffs had caused bleeding. However, due to him being found unconscious, Officer Tarrant reported a conduct violation against plaintiff for allegedly using an intoxicating substance and placed him in administrative segregation. Plaintiff states that the conduct violation was expunged on May 4, 2018. Plaintiff grieved the use of the zip-cuffs on his ankles, and he claims that Jennifer Sachse, the Warden at MECC, improperly denied his grievance. Plaintiff also asserts that Cindy Griffith upheld the denial of the grievance, finding he had "superficial abrasions" from the zip-cuffs.

Plaintiff seeks specific injunctive relief as well as compensatory and punitive damages in this action. Some of plaintiff's requests for injunctive relief are specific to FCC, and he no longer resides at this prison. When a prisoner has been transferred to a new correctional facility, his claims for injunctive and declaratory relief are properly denied as moot. *See Gladson v. Iowa Department of Corrections*, 551 F.3d 825, 835 (8th Cir.2009).

**Discussion**

The Court has reviewed the complaint and believes that, although plaintiff may be able to assert claims based on the denial of his constitutional rights, he has improperly joined in this one lawsuit all twenty-one (21) defendants and his numerous claims against them, relating to two separate penal institutions. Rule 20(a)(2) of the Federal Rules of Civil Procedure governs joinder of defendants, and provides:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Therefore, a plaintiff cannot join, in a single lawsuit, a multitude of claims against different defendants that are related to events arising out of different occurrences or transactions.

In other words, "Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). "Unrelated claims against different defendants belong in different suits, . . . [in part] to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *Id.*

Rule 18(a) of the Federal Rules of Civil Procedure, which governs joinder of claims, provides:

> A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.

Therefore, multiple claims against a single defendant are valid.

Because plaintiff is proceeding pro se, the Court will give him an opportunity to file an amended complaint. In so doing, plaintiff should select the transaction or occurrence he wishes to pursue, and limit the facts and allegations to the defendant(s) involved therein. Plaintiff should only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). Alternatively, plaintiff may choose to select one defendant and set forth as many claims as he has against that single defendant. *See* Fed. R. Civ. P. 18(a).

If plaintiff wishes to pursue additional claims against additional defendants, and the claims do not arise from the same transaction or occurrence he has chosen to advance in his amended complaint, he must file each such claim as a new civil action on a separate complaint form, and either pay the filing fee or file a motion for leave to proceed in forma pauperis.

Plaintiff must prepare the amended complaint using a Court-provided form, and must follow Rule 8 and 10 of the Federal Rules of Civil Procedure. Rule 8 requires that the complaint

contain a short and plain statement of the claim showing entitlement to relief. In the "Caption" section of the form complaint, plaintiff should write the name of the defendant(s) he wishes to sue. In the "Statement of Claim" section, plaintiff should begin by writing the defendant's name. In separate, numbered paragraphs under that name, plaintiff should: (1) set forth the factual allegations supporting his claim against that defendant; (2) state what constitutional or federal statutory right(s) that defendant violated; and (3) state whether the defendant is being sued in his/her individual capacity or official capacity.[8] If plaintiff is suing more than one defendant, he shall proceed in this manner with each one, separately writing each individual defendant's name and, under that name, in numbered paragraphs, the allegations specific to that particular defendant and the right(s) that defendant violated.

Plaintiff is advised that he must allege facts that show how each defendant is causally linked to, and directly responsible for, violating his rights. *See Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) (§ 1983 liability arises only upon a showing of personal participation by defendant); *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights). Plaintiff is also advised that, for an action to be allowed to proceed against a fictitious, or "Doe" defendant, the complaint must make sufficiently specific factual allegations to permit that defendant to be identified after reasonable discovery. *See Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985).

Plaintiff shall have **twenty-one (21) days** from the date of this Order to file an amended complaint. Plaintiff is warned that the filing of the amended complaint completely replaces the original. Claims that are not re-alleged are deemed abandoned. *E.g., In re Wireless Telephone Federal Cost Recovery Fees Litigation,* 396 F.3d 922, 928 (8th Cir. 2005).

---

[8] The failure to sue a defendant in his or her individual capacity may result in the dismissal of that defendant.

### Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). A district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, the Court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be unduly complex. The Court will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motions for leave to proceed in forma pauperis [Doc. #2 and #7] are **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $45.32 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his

prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff shall submit an amended complaint, in accordance with the Federal Rules of Civil Procedure and the instructions set forth in this Memorandum and Order, no later than **twenty-one (21) days** from the date of this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff two (2) blank forms for the filing of a prisoner civil rights complaint. Plaintiff may request additional forms from the Clerk, as needed.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [Doc. #12] is **DENIED AT THIS TIME**.

**If plaintiff fails to timely comply with this Order, the Court may dismiss this action, without prejudice and without further notice**.

Dated this 27th day of August, 2019.

/s/ Jean C. Hamilton  
JEAN C. HAMILTON  
UNITED STATES DISTRICT JUDGE