**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ISAIAH MARIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-CV-1815 NAB |
| | ) | |
| SHANNON MONTGOMERY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court upon review of plaintiff's third amended complaint. Plaintiff, Isaiah Marin, is an inmate currently incarcerated at Potosi Correctional Center ("PCC"). Based upon a review of the complaint, the Court finds that the complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

**28 U.S.C. § 1915(e)**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action is malicious when it is undertaken for the purpose of harassing litigants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of

a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 1951-52.

**The Third Amended Complaint**[1]

Plaintiff is an inmate at the Potosi Correctional Center ("PCC"). He brings this action pursuant to 42 U.S.C. § 1983 against the following defendants, named in his third amended complaint: Shannon Montgomery (Square Cook, Farmington Correctional Center ("FCC")); Donna Gillam (Food Service Manager, FCC); Teri Lawson (Warden, FCC). Plaintiff names these defendants in their official capacities only.

Plaintiff asserts that he was assigned as a Level I inmate Cook at FCC on or about September 20, 2017. He states that his first day of work was on September 23, 2017[2], and on that date he "discovered" that defendant Shannon Montgomery, the Square Cook at FCC, assigned him to a position where inmate Daniel Walker "was assigned as, what administrative, correction officer, square-person, and food service staff members and inmates call in all institutions…" a "leadman." In reality, plaintiff admits that Walker was a Level III inmate Cook. Plaintiff has attached a Warden Responses to his Inmate Grievance which states:

[1]The Docket is somewhat unclear as to how many pleadings have actually been filed by plaintiff. It appears that the Third Amended Complaint is similar to the Amended Complaint filed on September 13, 2019. For ease of reference the Court is reviewing the document filed as the Third Amended Complaint filed on November 5, 2019. Docket No. 20.

[2]Plaintiff states that he worked in this position until September 28, 2017.

> Your grievance concerning work assignments has been reviewed. You are claiming offenders are being assigned as supervisors (lead-man) over you. You feel this creates an unhealthy prison climate and endangers the lives of offenders.
>
> You are requesting the practice of assigning offenders as lead man be disbanded. Information received concerning the above subject indicates the following: Your complaint was adequately addressed in your IRR response. The position of "lead man" is a pay slot not a supervisory position over other offenders. You have failed to provide any additional information/evidence to support your claim. Your grievance is denied.

Plaintiff states that he believes there is a hierarchy between inmates within job assignments in the kitchen at FCC. He asserts that some inmates, or "leadmen," have the ability to tell other inmates what to do within their job assignments. Plaintiff does not believe inmates should have supervisory authority over other inmates. Plaintiff asserts generally, that defendants Shannon Montgomery and Donna Gillam, (Cook and Food Service Manager at FCC), acted incorrectly in allowing some inmates to have supervisory authority as "leadmen" over other inmates in the kitchen. He states that defendants Montgomery and Gillam "caused an unsafe prison environment of strife and hostilities between plaintiff and inmate Daniel Walker by positioning Daniel Walker as an authoritative Level III inmate Cook, leadman supervisor over plaintiff, violating plaintiff's Eighth Amendment right to protection from cruel and unusual punishment."

As an example of what plaintiff believes to be "cruel and unusual punishment," plaintiff claims that Daniel Walker was allowed to give him orders as a Level III cook, which violated plaintiff's rights.

Plaintiff states in a conclusory fashion that Warden Teri Lawson and Donna Gillam were supposed to "supervise" the functions in the kitchen at Farmington Correctional Center. He states that these individuals failed to fix the violations that were occurring at the FCC kitchen in that "leadmen" were being allowed to tell other inmates what to do in the kitchen environment.

Unfortunately, plaintiff does not state how he was harmed if, in fact, another inmate did direct his actions in the kitchen in any way. Plaintiff also does not state how he believes such a "hierarchy" in the kitchen was a constitutional violation. Moreover, although he claims that the supervisors of FCC knew about the practice and condoned it, he has failed to provide anything other than his own conclusory allegations to support his contentions.

Plaintiff also claims that while he worked as a Level I Cook at FCC, from September through October 2017, he had to "repeatedly lift on a daily basis. . .fifty (50) pound bags/sacks of uncooked beans, uncooked oatmeal, uncooked grits, uncooked cracked wheat…" Plaintiff states that he lifted these items without back support and that at some point he strained his lower back fulfilling his work assignment.

Plaintiff claims that defendant Gillam "was responsible for all food service functions in Farmington Correctional Center" and defendant Lawson was touring the prison to oversee the different functions of the different areas in the prison. From these purported statements, plaintiff claims that Gillam and Lawson should have been aware that FCC did not provide back support to inmates. Plaintiff therefore, concludes, that defendants Gillam and Lawson acted cruelly and in violation of the Eighth Amendment toward plaintiff. However, plaintiff does not state that defendants Gillam and Lawson knew about his alleged back injury and failed to provide him with medical care for his injury or provide him accommodations for his injury, such as a second person to help with the heavy lifting or a back support. In fact, plaintiff has attached a grievance response to his third amended complaint, which advised him that if he felt that it was "unsafe to lift an item by [himself] to request help." Plaintiff claims that this response was inadequate and asserts that defendants Warden Teri Lawson and Food Service Manager Donna Gillam are all responsible for realizing the need for back supports for food service workers who lift heavy objects and providing care for those persons.

Plaintiff seeks injunctive relief and compensatory damages in this action.

**Discussion**

Plaintiff's official capacity claims against defendants must be dismissed for failure to state a claim. A suit brought against a state official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). In other words, the real party in interest in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). *See also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"); and *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official…capacities sues only the public employer").

However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will*, 491 U.S. at 71. *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983"). Moreover, in the absence of a waiver, the Eleventh Amendment[3] bars suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998).

Plaintiff alleges that all the named defendants are employed at the Farmington Correctional Center in Farmington, Missouri. The Farmington Correctional Center is part of the Missouri Department of Corrections, which is a state agency of the State of Missouri. As noted above, plaintiff's official capacity claim against each individual defendant is really a claim

[3] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI.

against that defendant's employer. Accordingly, plaintiff's official capacity claims are actually claims against the State of Missouri. Such claims are barred because a state is not a "person" for purposes of § 1983, and because the Eleventh Amendment bars suits against state officials acting in their official capacity.

Even if plaintiff's claims were not barred, he has still failed to allege any facts to support official-capacity liability. In order for § 1983 liability to attach to a governmental entity in an official capacity suit, the plaintiff must show that the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). Thus, there are three ways in which a plaintiff can establish liability in an official capacity suit.

First, a plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390.

Plaintiff has not alleged that he was subjected to an unconstitutional policy in this lawsuit. He has not pointed to an actual Missouri Department of Corrections policy relating to the "leadman" position or the heavy lifting of foodstuffs without a belt or other accommodation. Thus, he has not stated an unconstitutional policy claim.Alternatively, a plaintiff can establish a

claim of liability based on an unconstitutional "custom." In order to do so, the plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Although plaintiff has indicated that he disagrees with the unofficial "custom" of the "leadman" parlance by the kitchen staff at FCC, he has not explained how the use of this alleged custom has injured him other than to say that he believes that allowing some inmates to give orders to other inmates in the kitchen "caused an unsafe prison environment of strife and hostilities." Similarly, plaintiff has not alleged that he was injured by the custom of failing to provide weight belts to kitchen staff. Rather, plaintiff simply states that he strained his back while lifting bags of oats or beans or barley in the kitchen. Although plaintiff complains that he asked for a weight belt, he does not allege that it was a custom of the prison not to provide one.

Plaintiff's vague and conclusory allegations wholly lack factual support and are not entitled to the presumption of truth. *See Ashcroft v. Iqbal*, 129 S.Ct. at 1950-51. Even *pro se* plaintiffs are required to allege facts in support of their claims, and the Court will not assume facts that are not alleged. *See Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004).

Finally, a plaintiff can prove the liability of a governmental entity by establishing a deliberately indifferent failure to train or supervise. To do so, the plaintiff must demonstrate a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874

F.3d 581, 585 (8th Cir. 2017). Plaintiff has not alleged a pattern of constitutional violations by untrained employees. Thus, he has not alleged a failure to train or failure to supervise in this action.

Plaintiff's third amended complaint contains no factual assertions regarding an unconstitutional policy, custom, or deliberately indifferent failure to train or supervise. Such allegations are necessary in order to state an official capacity claim. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of municipal liability claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Accordingly, for the reasons discussed above, plaintiff's official capacity claims against defendants must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** plaintiff's motion to vacate additional copies of amended complaint [Doc. #20] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that an appeal of this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 16th day of March, 2020.

/s/ Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE